IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **GNL RIDGLEA, LLC,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00286-O-BP |
| § | |
| **GUANG DONG HAILEA GROUP CO.,** § | |
| **LTD.,** *et al.*, § | |
| § | |
| Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Two groups of contested motions and a lone joint motion are before the Court in this product liability case concerning fire damage to property allegedly caused by a defective chiller and pump in a tropical fish tank. The first group consists of the 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Brief (ECF No. 7) and Appendix in Support (ECF No. 8) filed by Defendant Guang Dong Hailea Group Co., Ltd. ("Hailea") on May 7, 2018; the Response to Hailea's Motion (ECF No. 15) and Affidavit of Nick Sranske (ECF No. 16) filed by Plaintiff GNL Ridglea, LLC ("GNL") on May 29, 2018; Hailea's Reply in Support of its Motion to Dismiss (ECF No. 19) and Motion to Strike Nick Sranske's Affidavit (ECF No. 18) filed on June 12, 2018; GNL's Response to Hailea's Motion to Strike (ECF No. 21) filed on July 3, 2018; and Hailea's Reply in Support of its Motion to Strike (ECF No. 22) filed on July 17, 2018. The second group includes the Motion to Intervene and Memorandum Brief in Support (ECF No. 12) filed on May 22, 2018 by would-be Intervenor Plaintiff Central Garden and Pet Company ("Central Garden"); Central Garden's Motion for Leave to File Response in Opposition to Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion for Leave to Conduct

Discovery on Jurisdictional Issues and Memorandum Brief (ECF No. 14) filed on May 29, 2018; and Hailea's Response in Opposition to Central Garden's Motion to Intervene (ECF No. 17) filed on June 12, 2018. The last motion is the parties' Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's Motion to Dismiss (ECF No. 25) filed on September 4, 2018.

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 7), **DISMISS WITHOUT PREJUDICE** GNL's Amended Petition (ECF No. 1-6), and **DENY AS MOOT** Central Garden's Motion to Intervene (ECF No. 12) and Motion for Leave to File Response in Opposition to Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion for Leave to Conduct Discovery on Jurisdictional Issues (ECF No. 14), Hailea's Motion to Strike (ECF No. 18), and the parties' Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 25).

I.   BACKGROUND

GNL is a Texas limited liability company with its principal place of business in Richardson, Texas. (ECF No. 1-6 at 1). GNL owns and manages a building located at 6300 Ridglea Place in Fort Worth, Texas (the "Property"). (*Id.*). On March 26, 2015, a fire occurred in an office space at the Property that allegedly was caused by a defective Oceanic-brand chiller and pump for a tropical fish tank. (*Id.* at 2-3). GNL alleges that Hailea manufactured the chiller and pump. (*Id.* at 3). In its amended petition filed in the 153rd Judicial District Court of Tarrant County, Texas and removed to this Court, GNL alleges that it suffered fire damage to the Property and loss of business income, totaling approximately $730,197.53. (*Id.* at 2). GNL seeks to recover from Hailea under negligence

2

and product liability theories. (*Id.* at 3-5). GNL also alleges that an unknown defendant, "John Doe," may have manufactured the chiller and pump. (*Id.* at 2).

Hailea denies that it placed the chiller and pump at issue into the stream of commerce in Texas and, moreover, denies any contact with Texas. (ECF No. 7 at 15). In the Appendix attached to its Motion to Dismiss (ECF No. 8), Hailea filed the declaration of Jinye Yu, its Export Department Manager. (*Id.* at 5-14). The translated version of the declaration states the following jurisdictional facts concerning Hailea:

1. Its principal place of business is in China, and it "has never had any offices or factories outside China." (*Id.* at 5).

2. It "is not a resident of Texas," "never purposefully availed itself of the privileges and benefits of Texas law," "never engaged in any business activities in Texas," and has not "engaged in activities with an intent to invoke or benefit from the protections of Texas's laws." (*Id.*).

3. It "has never had any employees or offices in Texas" nor have its "employees, shareholders, officers, and directors" ever "traveled to Texas for business-related activities." (*Id.* at 6).

4. In Texas, it has not "owned, leased, or rented property;" had "an address, business records, a telephone or fax number, or a bank account;" held a meeting of its directors or shareholders; filed suit in court; had a court exercise personal jurisdiction over it; "consented to jurisdiction in any court;" filed an income tax return or paid state or local taxes; "marketed, advertised, or promoted" its products; or had a registered agent or been authorized to do business. (*Id.*).

5. It "does not know if any of its products have ever been sold in Texas," but it has "never shipped any products to Texas." (*Id.* at 7).

Hailea sells its products to distributors or other companies, not to individual consumers. (*Id.* at 6). It has Original Equipment Manufacturer ("OEM") clients for whom it manufactures products, who in turn "label, market, distribute, and sell the products as their own." (*Id.*). OEM clients "are responsible for arranging shipping, and shipments are generally done F.O.B., such that liability passes to the OEM clients upon pickup for transport in China and the OEM client is responsible for all shipping." (*Id.*). Hailea has no "control over where or to whom" its OEM customers in the United States sell products, and it has no "exclusive distribution agreement with any United States OEM client or company." (*Id.*). Although it has OEM clients in the United States, its distributors and OEM clients are not located in Texas. (*Id.*).

Hailea denies that it ever manufactured Oceanic pumps, as alleged in GNL's complaint, but it does concede that it manufactured Oceanic chillers for IEI Company Limited ("IEI"), an OEM client located in Hong Kong, and sold them to IEI on an F.O.B. basis. (*Id.* at 6, 9). Hailea denies knowing where IEI sold or shipped the Oceanic chillers. (*Id.* at 6). Hailea denies any business relationship with IEI other than as manufacturer and OEM client. (*Id.* at 8-9). Hailea seeks dismissal for lack of personal jurisdiction, relying on *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 508-09 (N.D. Tex. 2014), a similar case in which Judge Boyle dismissed a Chinese manufacturer of allegedly defective plumbing supplies.

In its Response to Hailea's Motion, GNL offers no evidence of jurisdictional facts of its own, but instead relies on the stream of commerce information provided by Hailea's and Central Garden's pleadings. (ECF No. 15 at 1.). GNL argues that Hailea should have foreseen that its Oceanic chillers could end up in the stream of commerce in Texas because "it provided the Chiller

at issue to IEI . . . and Hailea did not limit where its Oceanic Chiller could be sold." (*Id.* at 10). GNL further argues that because Hailea has OEM clients in the United States, albeit not in Texas, the Court is able to exercise personal jurisdiction over Hailea. (*Id.*). GNL seeks to distinguish *Interline Brands* because there was no direct proof in that case that any of the manufacturer's products were ever purchased in Texas. Here, there is evidence, objected to by Hailea, that the allegedly defective Oceanic chiller at issue was purchased in Texas. (*See* ECF No. 16.). GNL argues that it would not be against notions of fair play and substantial justice for the Court to exercise personal jurisdiction over Hailea. (*Id.* at 11).

In addition to GNL's and Hailea's pleadings on the jurisdictional issue, Central Garden moved to intervene as a plaintiff and sought leave to respond to Hailea's Motion to Dismiss. (ECF Nos. 12, 14). Central Garden asserts in its Motion to Intervene that it distributed the Oceanic chiller at issue and is an interested party. (ECF No. 12 at 1). Central Garden further asserts that it wished to pursue statutory defenses and indemnity claims against Hailea. (*Id.*). Central Garden asserts that the Court could exercise specific personal jurisdiction over Hailea because Hailea delivered the Oceanic chiller at issue into the stream of commerce with knowledge or reason to know or expect that this product would wind up in Texas. (ECF No. 14 at 13-14). Alternatively, Central Garden requests that the Court delay ruling on Hailea's Motion to Dismiss until the parties can conduct discovery on the jurisdictional issue. (*Id.* at 16-17).

Lastly, the parties filed a Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 25).

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

A court has personal jurisdiction over a foreign defendant if the forum state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Captain Manjit Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). Texas' "long-arm statute extends to the limits of federal due process." *Id.* Thus, the Court has to conduct a two-step inquiry that "collapses into one federal due process analysis." *Id.* Due process requires that the defendant have minimum contacts with the forum state (*i.e.*, that the defendant "purposely availed himself of the benefits and protections of the forum state") and that exercising jurisdiction would be consistent with "traditional notions of fair play and substantial justice." *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

When a defendant has minimum contacts with the forum state, a court may exercise specific or general personal jurisdiction over the defendant. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Exercising specific personal jurisdiction over a defendant is appropriate when the defendant's "contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). A defendant must purposely avail itself of the benefits and privileges of the forum state for that state to exercise specific personal jurisdiction over the defendant. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008).

"[A] court may assert general [personal] jurisdiction over [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to

render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Extensive contacts between a foreign defendant and the forum are required for general personal jurisdiction to be present. *Johnston*, 523 F.3d at 609. "Vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* at 609-10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)).

If a plaintiff establishes that minimum contacts exist between the forum state and a defendant, "the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Captain Manjit Sangha*, 882 F.3d at 102 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). A court must conduct a five-factor analysis to determine the fairness and reasonability of exercising jurisdiction over a defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). These factors are the: (1) burden on the nonresident defendant of having to defend itself in the forum; (2) forum state's interests in the case; (3) plaintiff's interest in obtaining convenient and effective relief; (4) interstate judicial system's interest in the most efficient resolution of controversies; and (5) shared interests of the states in furthering fundamental social policies. *Id.*; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987).

Lastly, dismissal without prejudice is appropriate if the Court determines that it lacks personal jurisdiction over the defendant. *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 665 (5th Cir. 2004) ("The district court's ruling on personal jurisdiction did not address the merits . . . , and, as a result, the claim . . . should have been dismissed without prejudice for filing in an appropriate forum.").

### B. Motion to Intervene

Federal Rule of Civil Procedure 24(a) permits a party to seek intervention as of right while Rule 24(b) allows for permissive intervention. Fed. R. Civ. P. 24. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996)). "Federal courts should allow intervention where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cr. 1994) (internal quotation marks omitted).

A court may grant a plaintiff-intervenor's motion to intervene as of right if the intervenor satisfies a four-prong test:

> (1) the application . . . must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas*, 805 F.3d at 657 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)).

A district court has complete discretion on whether to allow permissive intervention even if there is a common question of law or fact, or the requirements of Rule 24(b) are satisfied. *In Re Greyhound Secs. Litig.*, 1997 U.S. Dist. LEXIS 23051, at *7-9 (N.D Tex. Aug. 15, 1997). When deciding whether to permit intervention, the court should consider whether intervention will unduly delay the proceedings or prejudice existing parties. Fed. R. Civ. P. 24(b). Although intervention is not always improper after a case has been dismissed, it may be improper if a court ultimately determines that it is untimely. *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016).

### C. Jurisdictional Discovery

District courts have broad discretion regarding whether to permit a party to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283-84 (5th Cir. 1982). A party's request to conduct jurisdictional discovery should be granted if it makes a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A party seeking discovery on personal jurisdiction matters should identify the discovery needed, facts expected to be obtained, and how such information would support personal jurisdiction. *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, 2012 U.S. Dist. LEXIS 4192, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). A court can deny leave to conduct jurisdictional discovery when the movant fails to specify the facts it believes discovery would uncover and how these facts would support personal jurisdiction. *Id.*; *see also King v. Hawgwild Air, LLC*, 2008 U.S. Dist. LEXIS 49887, at *8 (N.D. Tex. June 27, 2008). But, "when the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly*, 213 F.3d at 855 (internal quotation marks omitted).

## III. ANALYSIS

### A. Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction Should be Granted.

Judge O'Connor should grant Hailea's Motion to Dismiss for Lack of Personal Jurisdiction because the evidence presented shows that Hailea had no contact with Texas other than the presence of one Oceanic fish tank chiller that allegedly caused the fire at issue. This fact alone is insufficient for the Court to exercise either specific or general personal jurisdiction over Hailea.

*1. Specific Personal Jurisdiction*

Texas' "long-arm statute extends to the limits of federal due process." *Captain Manjit Sangha*, 882 F.3d at 101; *Johnston*, 523 F.3d at 609. Federal due process requires that Hailea have

minimum contacts with the state of Texas. *Id.* (quoting *Wilson*, 20 F.3d at 647). Additionally, the exercise of jurisdiction must be consistent with traditional notions of fair play and substantial justice. *Id.* The Court is not satisfied that these two requirements have been met for it to exercise specific personal jurisdiction over Hailea.

Hailea does not currently sell or supply products to distributors or companies located in Texas, nor has it done so in the past. (ECF No. 7 at 7). Hailea only supplied Oceanic chillers, like the one that allegedly caused the fire at issue, to IEI, its OEM customer in Hong Kong. (*Id.* at 8). Hailea did not know where IEI sold or shipped the Oceanic chillers or if any were ever shipped to Texas. (*Id.*). It did not have control over where or to whom IEI sold these products. (*Id.*). Although Hailea does have OEM clients in the United States, its clients and distributors are not located in Texas. (*Id.* at 7). Even if they were, Hailea has no control over the clients' labeling, marketing, distribution, and sales. (*Id.*). These facts show that Hailea has no minimum contacts with Texas.

Moreover, GNL does not assert any facts to the contrary that could establish that Hailea does have minimum contacts with Texas. For instance, GNL conceded in its petition that it "believed" Hailea was the manufacturer of the Oceanic chiller at issue but did not know for certain. (ECF No. 1-3 at 4). GNL asserted that it is relying on a stream of commerce theory to establish that Hailea had minimum contacts with the state of Texas because it did not purchase the Oceanic chiller directly from Hailea. (*Id.* No. 15 at 4). This assertion bolsters Hailea's declaration that it never sold Oceanic chillers directly to any clients in Texas, which further establishes that Hailea does not have minimum contacts with Texas.

GNL rests its jurisdictional argument on a stream of commerce theory and the foreseeability that a product sold in China might travel to Texas. GNL asserts that Hailea should have foreseen that its Oceanic chillers could end up in the stream of commerce in Texas because

10

it sold the chiller to IEI and "did not limit where its Oceanic Chiller could be sold." (*Id.* at 10). But, the connection between Hailea's selling or supplying the allegedly defective Oceanic chiller to IEI and that chiller winding up in a Texas office building and catching fire is too attenuated for Hailea to have foreseen such a chain of events.

GNL's description of its stream of commerce theory that supposedly brought the Oceanic chiller at issue from Guangdong Province, China to Fort Worth, Texas illustrates the point. Hailea manufactured the allegedly defective Oceanic chiller to IEI's order and sold it to IEI on an F.O.B. basis. IEI then sold it to Central Garden (without Hailea's involvement in or control over the transaction), and the chiller traveled through one of several United States ports. (ECF No. 16 at 2-3). From there, the chiller was shipped to Central Garden's warehouse in Wisconsin and then to Dallas, Texas to one of Central Garden's distribution centers in the United States. (*Id.* at 3). From there, the chiller was shipped to Franks Tanks & Maintenance in Fort Worth, which then sold it to David Byrd of Accurate, the lessee of the office space that caught fire. (*Id.* at 3-4). Between Hailea's manufacture of the chiller to IEI's specifications and the fire at issue were six intervening transactions that brought the chiller from China to Fort Worth. Based on the evidence presented, Hailea did not know or have reason to know that by selling or supplying the allegedly defective Oceanic chiller to IEI, that chiller would be sold to someone in Texas and that Hailea would be hailed into this Court.

The undersigned agrees with Hailea that Judge Boyle's decision in *Interline Brands* is instructive here. In that subrogation case, a Chinese company manufactured plumbing products that it sold to distributors. 997 F. Supp. 2d at 504. The Chinese manufacturer never sold its products directly to consumers, but often shipped its products to a United States distribution center in Nashville, Tennessee. *Id.* As a result, the products were sold for use in residential construction in

Texas and allegedly caused water-related property damage to three of thirteen Texas residences at issue in that case. *Id.* Judge Boyle granted the manufacturer's motion to dismiss for lack of personal jurisdiction because the Court could not infer that the defendant knowingly benefitted from the Texas market in the sale of its plumbing products. *Id.* at 508. The Court reasoned that it was not foreseeable that the Chinese manufacturer's products would be sold or supplied to Texas residents. *Id.* at 509. Consequently, specific personal jurisdiction did not exist, and in the absence of general personal jurisdiction, the Court granted the manufacturer defendant's motion to dismiss. *Id.* at 508-510.

The facts here are analogous to those in *Interline Brands*. Like the defendant there, Hailea is also a Chinese manufacturer that sells its products directly to distributors and companies as opposed to consumers. (ECF No. 7 at 7). Here, however, Hailea sold its Oceanic chillers to IEI, a Chinese OEM client not located in the United States. (*Id.* at 8). If one of Hailea's Oceanic chillers was defective and allegedly made its way to a Texas office space and caused a fire, it was due in no part to Hailea purposely availing itself of the Texas market or the benefits of Texas laws. Even more, Hailea was not aware that IEI was selling or supplying its Oceanic chillers to United States companies and distributors unlike the manufacturer in *Interline Brands* that knew its products were supplied to a United States distribution center in Nashville, Tennessee. If the Court refused to exercise specific personal jurisdiction over the Chinese manufacturer on those facts, then the exercise of specific personal jurisdiction over Hailea, which had less knowledge or reason to know that its chillers would wind up in Texas, is not warranted.

    2. *General Personal Jurisdiction*

For the Court to exercise general personal jurisdiction over Hailea, its contacts with Texas must be "so 'continuous and systematic' as to render [it] essentially at home in the forum state."

*Goodyear Dunlop Tires Operations*, 564 U.S. at 919. As shown above, the evidence presented shows a lack of contacts between Hailea and Texas. Hailea is at home in China, but not in Texas. In the absence of continuous and systematic contacts, the Court cannot exercise general personal jurisdiction over Hailea.

Because Hailea has proven that it did not have sufficient contacts with Texas to support the exercise of either specific or personal jurisdiction, the undersigned recommends that Judge O'Connor grant Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and dismiss GNL's petition without prejudice.

### B.  Central Garden's Motion to Intervene Should be Denied as Moot.

Central Garden moved to intervene as of right, or in the alternative, permissively under Federal Rule of Civil Procedure 24. (ECF No. 12). In applying the four-prong test mentioned previously, the undersigned ordinarily would recommend that Judge O'Connor grant Central Garden's Motion to Intervene. This is because Central Garden timely filed its motion before discovery had commenced and did not seek to delay or reconsider phases of the litigation that had already concluded. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). Additionally, Central Garden has a legally protectable interest relating to this lawsuit because it seeks indemnification from Hailea. (ECF No. 12 at 1). The disposition of this case could also lead to Central Garden's indemnity claims and statutory defenses being foreclosed, or at the very least, impeded. Having concluded that Central Garden does have legally protectable interests that may be impaired by this lawsuit, the Court is satisfied that Central Garden met its burden to demonstrate inadequate representation unless the Court permitted it to intervene.

The undersigned considered Central Garden's Motion to Intervene and supporting Brief (ECF No. 12) and its Motion for Leave to Respond to Hailea's Motion to Dismiss and the proposed

Response to Hailea's Motion to Dismiss (ECF No. 14). Neither these pleadings nor the evidence and exhibits attached to them alter the analysis of Hailea's 12(b)(2) Motion to Dismiss and the undersigned's conclusion that personal jurisdiction over Hailea is lacking in this case. Because the Court lacks personal jurisdiction over GNL's claims against Hailea, the same jurisdictional defect applies to Central Garden's proposed Complaint in Intervention (*Id.* No. 12-1). Accordingly, Judge O'Connor should dismiss Central Garden's Motion to Intervene (ECF No. 12) as moot.

Likewise, Central Garden's Opposition to Hailea's Motion to Dismiss and alternative request for leave to conduct jurisdictional discovery (*id.* at 14) should be dismissed as moot. As with GNL, Central Garden has failed to make a "preliminary showing of jurisdiction," and for that reason Central Garden's request for jurisdictional discovery should not be ordered. *Fielding*, 415 F.3d at 429. Based on the evidence presented by Hailea, the undersigned recommends that Judge O'Connor dismiss GNL's suit. As a result, jurisdictional "discovery would serve no purpose and should not be permitted." *Kelly*, 213 F.3d at 855. Accordingly, the undersigned recommends that Judge O'Connor deny Central Garden's Motion to Intervene and request to conduct jurisdictional discovery as moot.

### C. Hailea's Motion to Strike Should be Denied as Moot.

GNL submitted Sranske's Affidavit in support of its arguments that the Court could exercise personal jurisdiction over Hailea under a stream of commerce theory. (ECF No. 16). Sranske's Affidavit seeks to establish that Central Garden allegedly purchased the defective Oceanic chiller that caught fire from IEI, which ordered the product from Hailea. (*Id.* at 2). Hailea moves to strike the Affidavit because Sranske lacks personal knowledge to attest to multiple facts and because his testimony contains objectionable hearsay. (ECF No. 18). The undersigned agrees that the Affidavit is defective and objectionable, but even if the statements in the Affidavit were

accepted as true, which the undersigned did for purposes of considering the pending motions, the evidence does not prove that the Court should assert personal jurisdiction over Hailea. Therefore, the undersigned recommends that Judge O'Connor deny Hailea's Motion to Strike Sranske's Affidavit as moot.

### D. The Parties' Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction Should be Denied as Moot.

The parties filed a Joint Motion to Stay Discovery Deadlines Pending the Court's Ruling on Defendant's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 25). The undersigned has considered the motions, pleadings, and applicable law. Having recommended that Judge O'Connor dismiss this lawsuit without prejudice for lack of personal jurisdiction, the undersigned also recommends that the parties' Joint Motion to Stay Discovery be denied as moot.

## IV. CONCLUSION

The undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DISMISS WITHOUT PREJUDICE** GNL's Amended Petition (ECF No. 1-6), **GRANT** Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 7), and **DENY AS MOOT** Central Garden's Motion to Intervene (ECF No. 12) and Motion for Leave to File Response in Opposition to Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion for Leave to Conduct Discovery on Jurisdictional Issues (ECF No. 14), Hailea's Motion to Strike (ECF No. 18), and the parties' Joint Motion to Stay Discovery Pending the Court's ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 25).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions,

and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on October 5, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE